**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ted Mink, | No. CV09-2582 PHX DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| State of Arizona, et al., | |
| Defendants. | |

Plaintiff Ted Mink has filed a motion for partial summary judgment against the City of Mesa, Officer Scott Sorensen, Sergeant Ryan Stokes, Officer John Doe, and Officer Joseph Trafan (collectively "the City Defendants"). Dkt. #7. The City Defendants oppose the motion and have filed a cross-motion for summary judgment. Dkt. #20. The motions are fully briefed. Dkt. ##22, 27. Mink has also filed a motion to amend the pleadings (Dkt. #31) and a motion for preliminary injunction (Dkt. #33). The City Defendants oppose both motions (Dkt. #34), as do Defendants Tina Byrd, John Carlson, Stacey Stanton, and the state of Arizona (collectively "the State Defendants") (Dkt. ##35, 36). The motions are fully briefed. Dkt. #39.

For reasons that follow, the Court will deny Mink's motion for partial summary judgment (Dkt. #7), grant in part and deny in part the City Defendants' cross-motion for summary judgment (Dkt. #20), and deny Mink's motion for a preliminary injunction (Dkt. #33). The Court will grant Mink's motion to amend the pleadings (Dkt. #31).

1  **I.    Background.**

2     According to Mink, he received a traffic citation on November 14, 2006 in London,
3  Ohio, which he paid on November 29, 2006. Dkt. #1-2 at 7.[1] Despite the fact that he paid
4  the ticket, a court in Ohio ordered the Arizona Motor Vehicle Division ("MVD") to suspend
5  Mink's driver's license for failure to pay the ticket. *Id.* The MVD ordered the suspension
6  to start on March 5, 2007, and Mink's license was suspended from that date.

7     On November 17, 2009, Mink was pulled over by Officers Scott Sorenson and Joseph
8  Tarfan because of a large crack in the windshield of his vehicle. Dkt. #7-1 at 2-3. Sorenson
9  requested Mink's driver's license, registration, and proof of insurance, which Mink provided.
10 *Id.* at 3. Sorenson ran a check on Mink's driver's license and found that the MVD records
11 showed the license was suspended. *Id.* Sorenson informed Mink of the suspension, which
12 Mink disputed. *Id.* at 4. Because the suspension was on record, Sorenson informed Mink
13 that his vehicle would be impounded and that he would be cited for four violations – driving
14 with a suspended license, driving with a broken windshield, driving with a broken seatbelt,
15 and past insurance non-compliance. *Id*. Mink also disputed that he had ever been without
16 insurance, but Sorenson told him that the MVD data showed that he had an insurance
17 violation and that Mink would be ticketed. *Id.* The officers called a tow truck, and Mink
18 requested the officers to call a supervisor to the scene. *Id.* at 4-5. When the tow truck
19 arrived, Mink requested that a different tow company be called because he had a bad
20 experience with the company that the officers had called, and he also requested that the
21 officers wait to tow the vehicle until the supervisor arrived. *Id.* at 5-8. The officers allowed
22 the truck to be towed before the supervisor, Sergeant Ryan Stokes, arrived. *Id.* at 9.

23    When Stokes arrived, Mink explained what happened and Stokes told Mink that the
24 officers acted as they should have. *Id.* Mink then requested that one of the officers give him
25 a ride home because he had just been to the doctor and had a serious heel injury that would

---

[1] Citations to pages in the parties' filings will be to the page numbers applied by the Court's electronic docket at the top of each page.

1 | prevent him from walking. The officers refused. *Id.* After the officers left, Mink attempted to hitchhike, but another officer (Officer Doe) told him that he could not do so. *Id* at 11. This officer also refused to give Mink a ride home. *Id.*

Later that day, Mink visited the MVD to ask about the license suspension and the insurance issue. According to Mink, the MVD "confirmed that [Mink] did not have a suspended Arizona driver's license." *Id.* at 13. Mink then attempted to retrieve his car from impound, which was an extremely difficult process.

Based on the incident with the officers, as well as Mink's difficulties with the MVD in clearing his driving record and retrieving his car from impound, Mink filed suit in state court against the State Defendants, and against Sorenson, Tarfan, Stokes, Doe, and the City of Mesa, alleging that each Defendant violated his Eighth Amendment and Fourteenth Amendment rights and committed the state law torts of intentional infliction of emotional distress, negligent infliction of emotional distress, and outrage. Dkt. #1-2 at 9.

**II.  Legal Standard.**

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Jesinger*, 24 F.3d at 1130. In addition, the dispute must be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**III.  Summary Judgment Motions.**

Mink has filed a motion for partial summary judgment against the City Defendants on all claims, including a § 1983 claim under the Eighth and Fourteenth Amendments, and several state law claims. Dkt. #7. The City Defendants have cross-moved for summary

judgment on several of the claims. The Court will consider the arguments for each cause of action in turn.

### A. § 1983 claims.

A claim under § 1983 is only sustainable if a plaintiff can show (1) that the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived the plaintiff of a constitutional right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989).

#### 1. Eighth Amendment.

Both Mink and the City Defendants have moved for summary judgment on the Eighth Amendment claim. Mink contends that he is entitled to summary judgment because the City Defendants were acting under color of state law when they deprived him of his "Eighth Amendment right to have medical assistance called for him." Dkt. #7 at 4. In support of his argument, Mink cites *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989), and *Estelle v. Gamble*, 429 U.S. 97 (1976). Neither case supports Mink's argument.

In *Wood*, the plaintiff brought a § 1983 claim under the Fourteenth Amendment, not under the Eighth Amendment. 879 F.2d at 588. As a result, *Wood* is not applicable to Mink's Eighth Amendment claim. In *Estelle*, the Supreme Court established "the government's obligation" under the Eighth Amendment, which is to provide "medical care for those whom it is punishing *by incarceration*." 429 U.S. at 103 (emphasis added). Mink was not incarcerated when the alleged constitutional violation took place.

The City Defendants argue that they are entitled to summary judgment on the Eighth Amendment claim because "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). That is, "the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Id.* In

this case, Plaintiff is not complaining about actions that took place while he was incarcerated, or after a formal adjudication of guilt or a criminal prosecution. As a result, the Eighth Amendment does not apply and summary judgment in favor of the City Defendants is appropriate. Fed. R. Civ. P. 56(c).

### 2. Fourteenth Amendment.

#### a. City of Mesa.

The Supreme Court has held that a city cannot be liable for any constitutional deprivation caused by its employees unless it had a "policy or custom" that was executed by its employees and which caused the constitutional deprivation. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978). Mink argues that there is no issue of fact as to whether the City is liable for a violation of his Fourteenth Amendment rights because officers left him "at the side of the road with a heel injury and no way home," which was a constitutional violation caused by the City's policy of "injuring, falsely accusing, and harassing" him. Dkt. #7 at 5; Dkt. #1-2 at 3-4.

Mink admits that the actions of the officers in his case happened only once, but he argues, under *Pembauer v. City of Cincinnati*, 475 U.S. 469 (1986), that the one-time action of the officers shows the existence of a City policy or custom. Dkt. #7 at 5. The City argues that even if a one-time action can show the existence of a policy, the only City policy shown by the decision of the officers is that the City directs them to use "discretion to determine the amount of assistance that should be rendered to a stranded motorist." Dkt. #20 at 3. Because Mink has failed to present evidence of any City policy or custom of injuring Mink, the City asserts that Mink's Fourteenth Amendment claim fails as a matter of law. *Id*.

The Supreme Court has explained that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Mink does not contend that he needs more time for discovery. Because Mink has presented no evidence that it is a policy or custom of the City to injure Mink, the

Court will grant summary judgment in favor of the City on Mink's Fourteenth Amendment claim.

### b. Stokes, Sorenson, Tarfan, and Doe.

Both Mink and the City Defendants have moved for summary judgment on this claim. Mink argues that he is entitled to summary judgment on his Fourteenth Amendment claims against the officers because they were acting under color of state law when they impounded his vehicle and left him without transportation even though they "had a duty to help [him]." Dkt. #7 at 3. In support he relies exclusively upon *Wood*, 879 F.2d at 583.

In *Wood*, an officer pulled over a vehicle in the middle of the night, arrested the intoxicated driver, towed and impounded the vehicle, and left Wood, a female passenger who was riding in the vehicle, on the side of the road without any transportation. *Id.* at 586. Wood began walking home and, after walking one-half block, accepted a ride from a stranger who took her to a secluded area and raped her. *Id.* Wood sued the officer under § 1983, claiming a deprivation of her Fourteenth Amendment rights. The Ninth Circuit held that "mere negligence or lack of due care by state officials does not trigger the protections of the fourteenth amendment and therefore does not state a claim under section 1983." *Id.* at 587. Instead, a plaintiff must show that an officer acted with "deliberate indifference" to his or her well-being and security. *Id.* at 588. The Ninth Circuit also held that "a deprivation of liberty or property is not cognizable under section 1983 when a state's post-deprivation remedies are adequate to protect a victim's procedural due process rights." *Id.* at 588.

Mink argues that the Court should grant summary judgment in his favor because the officers acted with deliberate indifference to his well-being and security when they left him on the side of the road without a vehicle and with an injury. The Court disagrees. The question of whether the officers acted with deliberate indifference is for the jury to resolve, particularly when the Court considers the facts in the light most favorable to the City Defendants as the non-moving party. *Id.* at 588. "'When reasonable persons may disagree as to whether particular conduct constitutes negligence, gross negligence or recklessness, the question is one of fact to be decided by the jury.'" *Id.* at 588 n.4 (quoting *Fargo v. City of*

*San Juan Bautista*, 857 F.2d 638, 641 (9th Cir. 1988)). As a result, summary judgment for Mink is inappropriate.

The City Defendants argue that they are entitled to summary judgment on this claim because Mink caused his own injury by knowingly operating his vehicle without a valid driver's license. Dkt. #20 at 4-5. They argue that "Plaintiff was aware of the risk associated with illegally driving without a license, and consequently, risked suffering any consequences resulting from his illegal conduct, including the impound of his vehicle." Dkt. #20 at 6. The City Defendants fail to cite any legal authority in support of this proposition. The argument is contradicted by *Wood*, in which the female passenger undoubtedly knew the risk associated with riding in a car with an intoxicated driver, and yet the Ninth Circuit held she could recover under § 1983 if she proved deliberate indifference on the part of the officer. Stated differently, the City Defendants have not shown that a plaintiff's assumption of risk somehow negates deliberate indifference by a law enforcement officer.

The City Defendants also contend that Mink must "demonstrate that the state greatly increased the danger to [him] while constricting access to self-help." Dkt. #20 at 7. The only authority they cite in support of this proposition is *Estate of Stevens v. City of Green Bay*, 105 F.3d 1169, 1177 (7th Cir. 1997). In *Wood*, however, the Ninth Circuit did not hold that the plaintiff must show the officer constricted her access to self-help. To the contrary, the Court noted in *Wood* that the officers offered to call a ride for Wood, meaning that they certainly did not constrict her access to self-help. The Ninth Circuit held nonetheless that she could recover if she proved deliberate indifference. The Court therefore cannot conclude that the City Defendants are entitled to summary judgment because Mink cannot show the officers "cut off *all* avenues of aid without providing a reasonable alternative." Dkt. #20 at 7.

Finally, the City Defendants contend that Mink cannot show deliberate indifference because he has not alleged any deliberate act by the officers. Mink alleges, however, that he told the officers of his injury and that they intentionally chose to leave him without transportation. Dkt. #7-1 at 10. Viewing the facts in the light most favorable to Mink, a

1 reasonable jury could find this to be a deliberate act. The City Defendants have failed to
2 show that they are entitled to summary judgment.[2]

### B. State Law Claims.

Mink argues that he is entitled to summary judgment on his state law claims because he has shown (1) that the officers had a duty to protect him, (2) they failed to perform that duty, and (3) he was injured as a result. Dkt. #7 at 6. The City Defendants argue that those are elements of a traditional negligence claim, and Mink did not state a negligence claim in his complaint. The Court agrees. In his complaint, Mink alleges intentional infliction of emotional distress, negligent infliction of emotional distress, and outrage. Dkt. #1-2 at 9. The Court cannot grant his motion for summary judgment on a negligence claim that does not exist.[3]

The City Defendants contend that they are entitled to summary judgment on Mink's negligent infliction of emotional distress claim. Under Arizona law, a claim for negligent infliction of emotional distress must show that the plaintiff suffered mental anguish manifested as a physical injury. *See Pierce v. Casas Adobes Baptist Church*, 782 P.2d 1162, 1165 (Ariz. 1989); *Rowland v. Union Hills Country Club*, 757 P.2d 105, 108 (Ariz. App. 1988). Mink has provided no evidence that his emotional distress was manifested as a physical injury. While Mink does allege a physical injury to his heel, that injury was not the manifestation of emotional distress. Because Mink has provided no evidence of this essential element of his negligent infliction of emotional distress claim – evidence that would be within his possession – the City Defendants are entitled to summary judgment. *Celotex*, 477 U.S. at 322.

---

[2] In their reply brief, the City Defendants argue that the officers have qualified immunity. The Court will not consider this argument because it was made for the first time in the reply brief. *Delgadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008).

[3] In his reply to the City Defendants' motion for summary judgment, Mink "requests this Court to amend his pleading to conform to the evidence." Dkt. #22 at 3. The Court will deny this request, and instead will grant his motion to amend (Dkt. #31).

1 | The City Defendants also contend that they are entitled to summary judgment on the outrage claim because, in Arizona, "there is no separate tort of outrage, but rather, it is treated as intentional infliction of emotional distress." Dkt. #20 at 11. Defendants are correct, and the Court will enter summary judgment in their favor on this claim. *See Rowland*, 757 P.2d at 108 ("no separate tort of 'outrage' exists in Arizona.").

The City Defendants also request summary judgment on the intentional infliction of emotional distress claim. The tort of intentional infliction of emotional distress requires a plaintiff to prove that (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to cause the distress or recklessly disregarded the possibility of distress, and (3) the conduct actually caused severe emotional distress. *Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). The City Defendants argue that Mink has failed to show any of the elements.

To satisfy the first element, a defendant's conduct must be "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz. v. Bell Atlantic Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. App. 1995) (internal quotation and citation omitted). It is "the duty of the court in the first instance, as society's conscience, to determine whether the acts complained of can be considered as extreme and outrageous conduct." *Helfond v. Stamper*, 716 P.2d 70, 72 (Ariz. App. 1986) (quoting *Cluff v. Farmers Ins. Exch.*, 460 P.2d 666, 668 (Ariz. App. 1969).

The City Defendants argue that, even taking the facts in the light most favorable to Mink, reasonable jurors could not find that the defendants' conduct "falls at the very extreme edge of the spectrum of possible conduct." *Id.* (internal quotations and citations omitted). The Court agrees. At worst, the officers (1) intentionally left a man with a serious heel injury on the side of a road in the middle of the day, but near several gas stations where he could presumably call for help, (2) pointed a weapon at him when it appeared he might assault the driver of a tow truck that had been called, and (3) refused to give him a ride home. This

conduct, even if actionable on other grounds, is not so extreme as to go beyond all bounds of decency and be regarded as atrocious and utterly intolerable. *Mintz*, 905 P.2d at 563.

**C. Damages.**

Mink argues that he is entitled to summary judgment on his damages claim because he has proven liability on all other claims. As noted above, however, the Court is denying Mink's motion for summary judgment on all other claims.

**IV. Motion to Amend.**

Mink has filed a motion to amend and has lodged a second amended complaint which adds a Fifth Amendment cause of action, a negligence claim, and another Defendant. Dkt. ##31, 32. Both the City and State Defendants object on the ground that Plaintiff failed to comply with Rule 15.1 of the Local Rules of Civil Procedure. Dkt. ##34, 35. Rule 15.1 requires a party seeking to amend his pleading to "indicate in what respect it differs from the pleading which it amends, by bracketing or striking through the text to be deleted and underlining the text to be added." L.R.Civ. 15.1. Mink has failed to comply with this rule. *See* Dkt. #32.

The City Defendants also argue that the motion to amend should be denied because they currently have a motion for summary judgment filed against Plaintiff, and it would be unfair to allow him "to bolster his previously inadequate pleadings or plead new causes of action to prevent his entire suit against the City Defendants from being rejected through summary judgment." Dkt. #34 at 2. They contend that, if "the Court chooses to grant Plaintiff's motion, the Court would be providing Plaintiff with multiple opportunities to present his evidence so as to evade summary judgment, thereby prejudicing City Defendants." *Id.*

The Court disagrees. The Court's Case Management Order afforded the parties 60 days to amend pleadings and add parties. Dkt. #25, ¶ 2. Plaintiff sought leave to amend within this time period. Dkt. #31. By moving for summary judgment before the amendment period had closed – indeed, before the Court even entered the Case Management Order and some six months before the dispositive motion deadline (Dkt. #25) – the City Defendants

- 10 -

assumed the risk that amendments would be allowed after their motion had been filed.

The Court concludes that Defendants have not been prejudiced by Mink's failure to comply with Local Rule 15.1. Because Defendants have not otherwise shown that the motion for leave to amend should be denied, the Court will grant the motion. The amended complaint, of course, will not have the effect of reviving claims on which the Court is granting summary judgment in this order.

**V.    Motion for Preliminary Injunction.**

Mink has also filed a motion for preliminary injunction which asks the Court to prevent the expiration of his driver's license. Dkt. #33 at 2; Dktl #39 at 1-2. Mink has made no claim in this case concerning the expiration of his driver's license. That subject, therefore, is not appropriate for injunctive relief.

**IT IS ORDERED:**

1. Mink's motion for partial summary judgment (Dkt. #7) is **denied**.
2. The City Defendants' motion for summary judgment (Dkt. #20) is **granted in part and denied in part**. Summary judgment is granted to all City Defendants on the § 1983 Eighth Amendment claim, to the City of Mesa on the § 1983 Fourteenth Amendment claim, and to all City Defendants on the intentional infliction of emotional distress claim, the negligent infliction of emotional distress claim, and the outrage claim. Summary judgment is denied to Stokes, Sorenson, Tarfan, and Doe on the § 1983 Fourteenth Amendment claim.
3. Mink's motion for preliminary injunction (Dkt. #33) is **denied**.
4. Mink's motion to amend (Dkt. #31) is **granted**. The Clerk shall file the second amended complaint, lodged at Dkt. #32.

DATED this 26th day of March, 2010.

_____
David G. Campbell
United States District Judge