James W. Fritz (#005715)
CITY OF MESA ATTORNEY'S OFFICE
P.O. Box 1466
Mesa, Arizona 85211-1466
Telephone: (480) 644-2343
James.Fritz@mesaaz.gov

Attorneys for Defendants

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Ted Mink,<br><br>　　　　　　Plaintiff,<br><br>vs.<br><br>State of Arizona, City of Mesa, Officer Scott Sorensen, Sgt. Ryan Stokes, John Doe, Tina Byrd, Joseph Trafan, John Carlson, Bobbi Jo Gray, Stacey Stanton,<br><br>　　　　　　Defendants. | Case No. CV09-02582-DGC<br><br>**STATEMENT OF FACTS IN SUPPORT OF CITY DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT**<br><br>(Honorable David G. Campbell) |

Defendants City of Mesa, Officer Scott Sorensen, Officer Joseph Trafan, and Sergeant Ryan Stokes (collectively, "City Defendants") submit this Statement of Facts in support of their Second Motion for Partial Summary Judgment:

1. As a result of the Court's rulings regarding City Defendants' cross-motion for summary judgment regarding Plaintiff's initial complaint and City Defendants' motion to dismiss Plaintiff's second amended complaint, two claims are still pending against the City Defendants: (1) *respondeat superior* negligence claim against the City of Mesa , and (2) a § 1983 Fourteenth Amendment claim against individual Mesa Police Officers Sorensen, Stokes and Trafan.

2. Plaintiff, in his Second Amended Complaint, ¶ 5, alleges only that Defendant City of Mesa "is liable under *respondeat superior.*"

3. In his Second Amended Complaint, ¶¶ 6-9, Plaintiff also alleges that the Defendant Officers "violated clearly established law and [each] has shown a deliberate disregard for Plaintiff's civil rights."

4. On November 17, 2008, at 10:25 a.m., Officers Sorensen and Trafan, riding together as partners, saw a small red pickup truck traveling on Broadway near the East 1100 block. (Exhibit 1, Mesa Police Departmental Report)

5. Officer Sorensen ran a computer check on the truck's license plate number 095 WKK AZ that indicated a mandatory insurance suspension. (Exhibit 2A, CAD (Computer Aided Dispatch) History; Exhibit 2B, CAD screen printouts; Exhibit 2C, CAD Event Chronology; Exhibit 2D, ACJIS Search report)

6. The Officer then initiated a traffic stop at 1100 East Broadway road block approximately 200 feet west of Broadway's intersection with Stapley Drive in Mesa. (Exhibit 1; Exhibit 9, Affidavit of Ryan Stokes)

7. The weather on the morning of November 17, 2008 was clear, sunny, and dry. (Exhibit 3, Lisa Lamont deposition excerpts, p.9, lines 20-21)

8. The Officers requested that the driver of the pickup truck turn off Broadway onto South Spencer Street, a sidestreet. (Exhibit 1)

9. Plaintiff Ted Mink identified himself as the driver and owner of the red Ford Ranger pickup truck, and immediately asked Officer Sorensen if Mink was being pulled over because he did not have a functional seatbelt on the driver's side of the vehicle. (Exhibit 1; Exhibit 4, Sorensen affidavit)

10. Officer Sorensen informed that they had pulled Mink over because of a cracked windshield. (Exhibit 1, p.3)

11. Officer Sorensen asked if Mink knew his license plate was mandatory suspended for no insurance. Mink indicated that he did not know. (Exhibit 1, p. 3)

1  12. Officer Sorensen asked Mink whether anything was wrong with Mink's driver's
2  license. Mink said, "No." (Exhibit 1, p. 3)
3  13. Officer Sorensen performed a computer search regarding Mink's driver's license,
4  and the search indicated that Mink's driver's license was suspended. (Exhibit 1, p. 3; Exhibit
5  2B)
6  14. Officers again asked Mink if he knew his license was suspended, and Mink
7  informed that he did know, and acknowledged that he had in fact been cited but that he had paid
8  his fines. (Exhibit 1, p.3)
9  15. Officer Trafan informed Mink that, pursuant to A.R.S. § 12-3511, Mink's vehicle
10 would have to be towed to an impound yard because of the suspensions. (Exhibit 1, Trafan
11 supplement, p. 1)
12 16. The CAD records for November 17, 2008 at 10:27:21 a.m. clearly show Mink's
13 driver license and vehicle registration suspended/ (Exhibits 2A to 2D; Exhibit 5, Mychajliw
14 Affidavit)
15 17. Pursuant to interstate agreements, an information network utilized by state motor
16 vehicle departments and law enforcement agencies nationwide, an agency (in this case, the
17 Madison County Municipal Court) will electronically post or notify agencies and departments of
18 vehicle and drivers operating on either or both a suspended license plate or registration and
19 driver's license; the agency that enters the data or information is the only agency that modifies
20 or deletes the information  (Exhibit 5)
21 18. A tow truck was requested and the police dispatcher notified All-city towing to
22 come to the 1098 East Broadway/Spencer Street location. (Exhibit 6, Donald Barker deposition
23 excerpts, p. 7, line 18)
24 19. The tow truck driver, Donald Barker arrived, parked his flatbed tow truck on the
25 east side of Spencer Street facing southbound because Mink and the Officers' patrol vehicle

were parked along the west side curb. (Exhibit 6, p. 15, lines 1-15)

20. Barker went over to Mink's vehicle, sat in the driver's seat, started the truck's engine, and began to pull away when Mink came up to the driver's door which was rolled down; Mink grabbed the door where the window was open and began hanging onto the door. (Exhibit 6, p. 20, line 4-20; p. 21, line 8; p. 28, line 20)

21. Mink was upset and belligerent and told Barker several times that Barker was not going to tow Mink's truck. (Exhibit 6, p. 21, lines 8-10)

22. Barker saw an officer move around to the front of Mink's truck; Barker also heard officers tell Mink several times to step away from the truck. (Exhibit 6, p. 22, line 5)

23. Barker did not see which officer drew a taser, but he saw a red dot on Mink's shirt. (Exhibit 6, p. 23, line 10)

24. Barker recalled the officers addressing Mink as "sir" several times, and thought that the officers at all times acted calmly, professionally and appropriately. (Exhibit 6, p.22, line 13; p. 30, lines 5-25)

25. Mink has testified that Barker entered Mink's vehicle without Mink's approval. (Exhibit 7, Mink deposition excerpts, p. 237, lines 4-8)

26. Mink also admitted that Officer Sorensen grabbed Mink and pulled Mink back from Mink's vehicle and the tow truck driver. (Exhibit 7, p. 242, lines 12-17)

27. When Mink continued to ignore officers' commands to back away from the vehicle, Officer Trafan drew his taser and pointed it at Mink for about 5 seconds; Trafan thought Mink was going to assault the tow truck driver. (Exhibit 8, Trafan Affidavit)

28. Upon seeing the red dot, Mink, with Sorensen holding Mink by the arm, stepped away from the vehicle. At that point, Trafan holstered his taser. (Exhibit 8)

29. Mink then began yelling at the officers that he wanted to talk to their Sergeant, so Officer Sorensen radioed Sgt. Stokes. (Exhibit 9, Stokes Affidavit)

30. When Stokes arrived, Mink's vehicle was already loaded onto the tow truck; Mink yelled at Stokes, and several times called Stokes an "asshole." Mink repeatedly demanded, "You need to give me a ride!" (Exhibit 9)

31. Stokes confirmed with Sorensen the reason for the impounding the vehicle, and then directed Mink to the nearby QT gas station and convenience store located at the southeast corner of Broadway and Stapley Roads, a distance of approximately 200 feet from the traffic stop location. (Exhibit 9)

32. Mink thinks he's not being aggressive or physically threatening unless he makes physical contact with someone (Exhibit 7, p. 242, lines 1-5)

33. Mink never mentioned any medical or other condition that would have prevented Mink from walking; Mink did not limp while at the traffic stop. (Exhibits 5, 8, 9)

34. Mink never mentioned that a taser had to be drawn to get Mink to comply with the officers' commands. (Exhibits 5, 8, 9)

35. Mink alleged in his second amended complaint at paragraph 25 that he had to walk 10 miles.

36. He later claimed that he had to walk one mile to the next major intersection at Broadway and Gilbert Roads. (Exhibit 10, Mink Affidavit, Exhibit to Plaintiff motion for partial summary judgment filed December 16, 2009)

37. On the day after the traffic stop, Mink rode one of his motorcycles to the All-City towing yard to check on his truck. (Exhibit 7, p. 232, line 18)

38. Lisa Lamont, the person identified by Mink as the person who gave Mink a ride home, testified that it was her son, Jesse Turner, not a stranger as alleged by Mink, whom Mink called as she and her son were driving to Sam's Club in Gilbert. (Exhibit 3, p. 7, line 21; p. 18, line 23; Exhibit 10, p. 11)

39. Lamont's son and Mink are no longer friends. (Exhibit 3, p. 18, line 23)

1    40.   It is Lamont's recollection that she and her son did not pick Mink up at a major intersection but at another corner where they found Mink sitting down or leaning against something when they arrived. (Exhibit 3, p. 10, line 10-18)

41.   Mink was upset about his vehicle being towed; how the police handled the matter; and, Lamont did not recall mentioning which foot hurt or why. (Exhibit 3, p. 11, line 18, to p. 12, line 22)

42.   Lamont's son and Lamont drove to Sam's Club where Lamont shopped for approximately 30 minutes while her son and Mink waited in the front area of Sam's Club. (Exhibit 3, p. 14, line 1-12)

43.   Lamont recalls her son telling her that Mink then went to the Arizona Department of Motor Vehicles, but she is not sure whether her son drove Mink. (Exhibit 3, p. 18, line 23)

44.   Mink's first mention of the traffic stop to a doctor did not occur until April 14, 2009. (Exhibit 11, Dr. Griffin Office note dated April 14, 2009)

45.   Mink also failed to mention the traffic stop incident when he obtained a second opinion regarding the need for a second surgery from an orthopedic surgeon on December 15, 2009, less than one month after the traffic stop. (Exhibit 12, office record of Keith Braun, M.D.)

Respectfully submitted this 23rd day of September, 2010.

/s James W. Fritz  
James W. Fritz  
Assistant City Attorney

ORIGINAL electronically transmitted  
this 23rd day of September, 2010  
with the Clerk of the District Court using  
the CM/ECF System for filing;

A COPY served by mail on the following, who is not a registered participant of the CM/ECF System:

Ted Mink
1615 N. 72nd Street
Mesa, AZ  85207
Plaintiff Pro Se

And a COPY mailed to:

Honorable David G. Campbell
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 623
401 West Washington Street, SPC 58
Phoenix, AZ 85003-2120


  /s Lisa Lorts
I:\Litigation\Fritz's cases\Mink\pleadings\Word\20100923 SOF 2d msj.doc